May it please the Court, I'd like to reserve four minutes for rebuttal. Please, watch the clock. I'll try to help you, but keep an eye on the clock. Thank you, Your Honor. The question in this case is not whether there is a First Amendment right of intimate association. There is. Nor is the question whether a public employee should suffer adverse employment action for exercising or maintaining that right. She shouldn't. The question this Court is called to decide in this appeal is more narrow. Let me ask you, actually, a preliminary question. As I understand it, Mr. McKay is the only defendant here, along with the school, or is it just Mr. McKay? No, it's just Mr. McKay. The complaint, the district court didn't have a problem with the complaint, but I have some questions. The only thing I found in the complaint aimed at Mr. McKay, it just says that he participated in, directed, set in motion, acquiesced in, was consulted about, et cetera, this germination of plaintiff's contractual relationship, which seems exactly what Ashcroft v. Iqbal told us was too conclusory and didn't provide enough factual allegations to be taken as true or to be permitted to go forward. So was there anything else in the complaint? Or why under Ashcroft v. Iqbal do we say that there's not enough to go forward against Mr. McKay? Well, Defendant McKay was the director of the Department of Child Safety. The letter that my client received terminating her relationship with the Department of Child Safety was written by a procurement officer. Defendant McKay's name was at the top as the director. Right. But we know from Star v. Baca you have to know about, there's no respondeat superior liability, you have to know about it and acquiesce at a minimum. But there's no facts in here that says he even knew about what was happening, or did I miss them in the complaint? No, Your Honor. Obviously, we were not behind the curtain when this decision was made within 24 hours of the Department of Child Safety. No, Ashcroft v. Iqbal says that doesn't really matter. I mean, the fact that you'd rather have discovery so you could find out what the person's actual activities were in that case, Mr. Ashcroft, didn't matter. It has to be in the complaint that you have to have some facts that make it plausible that the person was involved and knew about it. Well, Your Honor, we rely upon Lacey v. Maricopa County and Johnson v. Duffy from 1988. And the standard is whether the actor set in motion a series of events which ultimately led to the constitutional deprivation. And what in the complaint provides facts about or makes allegations about how he set the events into motion? We weren't there, Your Honor. Obviously, we weren't behind the curtain. We assumed, as the director of the Department of Child Safety, if an independent contractor is going to be terminated after the department learned about Dr. DeSoto's marriage, that the director certainly set into motion the procurement officer didn't just You're telling me, if I'm understanding correctly, that even if you were given a chance to amend the complaint, you couldn't make any further allegations against Mr. McKay? Not at this stage. Thank you. So I share my colleague's concern about this because I think Iqbal makes it very clear that in order to be plausible, you have to have some specifics. Now, we know you have not had any opportunity to do any discovery. But the reality is, just to accuse someone because they are a department head doesn't reach the level of specificity for a constitutional violation, does it? But his name was on the letter that we I understand that, but I mean, I don't know whether you've ever worked for the government before, but people use your name all the time, you know. You're the whatever, and you work in the department, and they have your name up there, and they're sending stuff out under your name all the time. How do we know without an allegation to that effect that Mr. McKay, in fact, did set this in motion? Your Honor, I could not in good faith make that allegation based upon what we knew at that time. So to get back to what my colleague said then, so we then in construing this complaint, this is the best you can plead in your attempt to comply with Iqbal, is that right? Yes, based upon paragraph 16. That is the best that I could allege based upon what I knew and my client knew. I'd like to turn to what I believe is one of the key issues on this appeal, and that is the district court's rejection of the clearly established law which we set forth in Atkins, Sowards, and Gaspers, and Abler, and that is the spouse's conduct here. Is there a Ninth Circuit case on point? I have not found any, Your Honor. So you're relying primarily on the Sixth Circuit case, fairly old Sixth Circuit cases, and a single Second Circuit case. But our standard is that there has to be, I guess, a robust consensus, or it has to be beyond debate. So why is it that you think that these cases from other circuits, primarily the Sixth Circuit, would put it beyond debate that firing or actually terminating her company, I don't think they fired her, terminating her company violated her right of intimate association? Well, first of all, Atkins basically denied qualified immunity relying upon the Roberts case in 1984, and every Sixth Circuit case... The Roberts case had nothing to do with marriage, right? It was about association and whether they had let people they didn't want into their club.  Right. So we, the Supreme Court has told us in qualified immunity cases that for something to be clearly established, there has to be something that's fairly close, closely analogous factually, that there has to be a prior case that's pretty close on point. So what's your best case that's closely on point? I would say the Gaspers case from the Sixth Circuit in 2011. In that particular case, husband and wife were working for a public agency, and basically one was demoted, one was fired, I believe, and the allegation had nothing to do with any course of conduct of the other spouse. In that case, they said there was no legitimate justification, but here there is some justification, right? She's working with children, she's working as an expert witness, and they have concerns about her relationship with her husband who murdered, who was convicted of murdering a child. Well, we don't know that. We haven't done any discovery yet. We don't know the true basis of why. Well, you know there was a news story that was on it. I mean, that's in the record, correct? Yes, and well, it's in the record, but Judge Teelberg did not consider that for purposes of the motion to dismiss in his order. So we believe that the Sixth Circuit, the three cases and other cases, have clearly established that it violates one's right to intimate association by terminating the relationship. That's an undue state intrusion into the marriage, and that line of cases has existed since 1994. So I guess the question is whether a reasonable government official in the position of who the procurement officer of DCS, Mr. McKay, assuming that he had anything to do with this, would think that it was a violation of Ms. DeSoto's constitutional rights to fire her when it found out that, or to terminate the contract when it found out that her husband had been convicted of murder. And so there's no case that's clearly on point. In Gaspers, it was a nepotism situation, correct? Yes, it was. Yeah, and so this was not based on retaliation for nepotism, which is, I guess, what they assumed in Gaspers. This was distinct. A reasonable officer could believe that for business reasons. That's at least the argument opposing counsel makes. Why shouldn't we accept that as being a reasonable basis, given how few cases there are on this point? Well, obviously, if the Court does, we do not prevail. But we believe that both Atkins and Sowards basically looked at the conduct of the spouse and whether that was the basis, and I think it's a reasonable inference and it's a plausible reason that that was the reason that Dr. DeSoto was terminated, i.e., the fact that her husband had committed a felony. Was it retaliatory? I mean, in those other cases, the spouse was suing one of the government officials or the spouse was running against one of the government officials, so there's an inference of retaliation. There's no inference of retaliation here, is there? Well, that is the Sowards case. Well, we believe that there is an inference of retaliation because, in fact, she suffered an adverse employment action because of her intimate association with her husband. The retaliation. Retaliation for what protected? The right of intimate association. Okay. So if the marriage itself is what you're saying, I understand. Yes. Okay. I see that my time has come. No, you can save your time. Good morning, Your Honors. Good morning. I would just point out, I guess on the initial point that you were bringing up, Your Honor, about the Iqbal Entwambly case, we believe, as Entwambly, the conclusory allegations of Paragraph 16 stop short of the line between possibility and plausibility based on the information and belief and then sort of the boilerplate allegations that are in there in Paragraph 16. I guess I would just make an additional point. You had also mentioned the media report and that Judge Teelborg down below did not consider the media report. We've obviously raised that in the answering brief. That was not something that was objected to by Mr. Soto, so we would submit that any objection to that is waived so it is, in fact, in the record. Counselor, can I just ask you this one question? Your opposing counsel suggests, if I understood him correctly, that the best authority for the constitutional right at issue here is a Sixth Circuit case, if I understood him correctly. Is that your understanding as well, that Mr. McKay should have known about that case and accordingly governed himself? And would, in fact, that cover the circumstances of this case? I don't think so, Your Honor. The primary cases that seem to be emphasized in the briefing by Ms. DeSoto are not the Gaspers case, but moreover the Adler, the Atkins, and the Sowards case. The Gaspers case, as Your Honor has noted, is a nepotism case. There was a media article in that case, but it was exactly about that. It was exactly about husband, employee, public employees working together in the context of nepotism. How close would this have to be? As you undoubtedly know, we deal with excessive force cases all the time in our circuit, and the question of qualified immunity on the Supreme Court has made it very clear, particularly in a recent case, yet again, that we can't have a rather high level of analysis. We have to have a case that is close enough that the affected officer, if he or she is of reasonable intelligence, can understand what his or her obligations are with respect to the other person. Is it your view, is it the government's view, that in this case there was no such case that fit the facts or close to the facts of this case? Yes, that's correct. I think every other case other than the Gaspers case was sort of a more typical retaliation case where there's sort of a shot across the bow in some way toward the employer, and then the employer reactively retaliates in some manner. You don't disagree, though, that there is a right of intimate association and that a government agency could unduly intrude on it by firing someone for getting married? We certainly don't object or take issue with the fact that there is indeed a right of intimate association. I guess the analysis that we see this as sort of a threefold progressive analysis. First, did paragraph 16 of the amended complaint, in fact, allege plausibly the personal involvement of Mr. McKay? If not, then the analysis is done and dismissal should be affirmed. If so, then we move to the second aspect that we haven't really addressed yet of whether Ms. DeSoto should be treated as a public employee. And the cases that are addressed in that context, the Umber case, the Claremont case, the Alpha Energy case are all sort of traditional retaliation cases as well, all in the context of free speech, whether the speech was a matter of public concern. Are you suggesting we analyze this under Eng? I'm suggesting that there's no way that every reasonable official would have known that in this separate context of the right of intimate association, that Ms. DeSoto should have been viewed and treated as a public employee under the analysis set forth in Umber or Claremont or Alpha Energy in the context purely of the free speech, the Pickering balancing test. Ms. DeSoto has cited no Pickering balancing test cases wherein there was a similar. Did the district court deal with any of this? No. I didn't think so. Was she a contractor? What was her position? She was the sole employee. I mean, it was her entity. It was a corporation, this Be In Psych, Inc. And so the contract was between Be In Psych, Inc. and the Department of Child Safety in the state of Arizona. And then she signed it as director of Be In Psych, Inc. And Ms. DeSoto concedes she was not a public employee. So the issue is, should she be treated as a public employee under the – and we discussed the issues with Judge Tilburg in oral arguments, and then Ms. DeSoto submitted supplemental briefing following the oral argument, which was the Umber case. So I thought in Claremont and Alpha Energy we held that a private employee of a government contractor could sue under Section 1983 for retaliation. I think that's correct, but that case is purely a separate analysis, and it's purely in the context of matter of public concern speech. Just going back to a more fundamental thing for me. Yes. I guess we all, I think, would agree that the Supreme Court has made it crystal clear that there's a protected right of marriage in intimate association. No question about it, right? Correct. Okay. So wouldn't a reasonable public official acting to cancel a contract or take adverse employment action against an employee or fire an employee, wouldn't that public official understand that if it occurs to him, I'm firing this person because of who she's married to, that's a problem? Certainly so. Okay. And the cases just say, the cases of the Sixth Circuit case and so forth, the district judge said, well, you know, those cases are distinguishable because they really focus on firing somebody because of what their spouse did. Isn't firing somebody because of what – who their spouse is subsumed more benign than what the spouse did? I'm firing you because your husband is a member of the Grange and I don't like members of the Grange. So I'm firing you because your husband's a member of the Grange. Wouldn't any reasonable public official know that that's a constitutional problem? Possibly in that context. That's not our case. This particular case – So here the contract was terminated specifically in your view. Why? Well, we have just noted the contractual provisions in the record. No, but why? In your view, what's your position? Why was the contract terminated? Why? My position is there was a nexus. I mean, this wasn't a situation where – No, no, no. Simple language for me, if you don't mind. Okay. Why was it terminated? What's the reason? Well, this was the Arizona Department of Child Safety. There was a contractual provision that services provided would include expert testimony. I really don't want to take all your time. Was it because she was married to this person or was it because she was married to a person who committed a crime? No, I think it was because it undermined the foundation and the basis of the contract. Prior to the dissemination of this information that she was married to a child murderer, that she was attempting for years to try to get the child murderer to move into her home with her. That's sort of a line of demarcation. That changed potentially the efficacy of her providing service in the context of the Department of Child Safety and child protection cases. So let me be sure I understand this. You seem to be jumping around from what the basis of this is. Are you saying that because the contract had provisions in it about expert witness, testimony, and basically the state needed to be able to rely on her to perform certain duties and Mr. McKay arguably thought, well, in this situation, if the press comes out and says she's married to this guy, it's going to completely undermine her utility. Are you suggesting that he focused on the contract and that that's the reason he terminated her? Because there was going to be an exposure for the news, didn't even think about the constitutional right? Is that your position? That's my position, yeah. And I think that would be the position of any reasonable director of child safety. This is the only state agency whose statutory charge is the protection of children. Had she sought to contract with a different state agency, the analysis may have been different. So the Sixth Circuit cases indicate that with a public employer there's a balancing involved, much like in Pickering and Garcetti as to whether it was reasonable, whether there was a good policy basis or not. Where do we draw the line? How do we know what constitutes an undue intrusion into, that's the terminology that we use in IDK, an undue intrusion by the state? I mean, obviously some intrusion might be justifiable. What's an undue intrusion? Well, I think probably the Gaspers case is an undue intrusion because it seems to be sort of more focused on the marriage aspect, the nepotism aspect. Whereas here, and I would think across the country, in a department charged with, solely charged with child protection, especially in a third-party contract type of a situation, there's a legitimate governmental interest. And I know the government is not an employer here because Ms. DeSoto is not a public employee, but certainly the cases are out there about the government's interest as an employer is different than the government's interest as a sovereign. Are you suggesting that in his analysis, if he conducted any, that Mr. McKay would have thought about, if he were aware of it, the point my colleague mentioned? In other words, is this an undue intrusion into the marriage relationship of the plaintiff in this case? I don't think – I think that's a good question. I think that it doesn't cross the line into undue and unwarranted, even though it has a tangential – I mean, any situation where someone loses income or an employment situation if they're married. I'm in the position that if he knew this law, he would have had a right to do that and say, okay, there is a right of intimate association here, but I cannot unduly intrude into it. But in this case, given the charge that I have by statute, the fact we're dealing with children, given the history involved here, given the role that the plaintiff is supposed to be playing in court and so on, I don't believe this is unduly intrusive into the relationship. I'm not trying to break up the relationship. She just can't represent us in connection with children. Is that a legitimate analysis? Is that a legitimate point that he could have undertaken if he had been aware of that law? It certainly is, because the marriage occurred two and a half years prior to the time that the contract was terminated. And based on the language of the complaint, there's allegations in there that somehow there was some sort of constructive knowledge on the part of the agency with respect to the fact of this marriage. And so it wasn't because of the marriage. It was more so the impact on the contract once this information came out. And the media report not only referenced the fact that obviously Ms. DeSoto's husband had been convicted of murdering a child, but there was also the fact that for years she had been trying to get this individual to move into her home with her two children, which was another component to this and which was separate and apart from the marriage itself. So if there was no undue intrusion, then there's no constitutional violation. But for qualified immunity purposes, we're really just looking at whether any reasonable official would have known that it was undue intrusion. So we're actually, even if it were an undue intrusion, we're looking at what a reasonable officer would have thought, right? That's on the second prong. Every reasonable official beyond debate is what the exacting standard is. I see I'm low on time. Do you have any other questions? No, thank you. No other questions? Thank you very much. So, counsel, you have some rebuttal time. Thank you very much, but I want to hit just at least a couple of points. I believe what an undue intrusion is was clearly defined by the Sixth Circuit. We don't need to have the marriage abandoned or dissolved, but the termination of a spouse's employment is an undue intrusion into the marital relationship. Let me ask you this, counsel. Again, hearkening back to our excessive force cases, which I know are different than this. It seems to me you're asking a lot of Mr. McKay to be familiar with the judgments and cases from the Sixth Circuit. But if he were familiar with that and he knew that you couldn't have an undue intrusion and he was charged with protecting children and the like, given the facts, which arguably could be construed in a public setting as salacious, in quotes, is that a clear constitutional violation? I believe it is, Your Honor. And why? I believe it is based upon those Sixth Circuit cases, which have been in existence since at least the primary one, which finally adopted the right of intimate association into the employment context. That's been around for, what, 23-odd years. But it doesn't say, none of those cases say that in no circumstances can a government have an adverse employment action against someone because of marriage. Indeed, Adler says, you know, in some circumstances, the conduct or even the identity of a wife might raise such serious concerns about her husband's suitability for public employment as to justify the husband's discharge or suggest that would be a possibility. So we know that it doesn't mean zero intrusion. It just is undue intrusion. So the question is, in this case, would every reasonable official have known it was undue intrusion? We need to focus on that piece. I believe that every reasonable public official should have known in light of the prior precedents. If we look at Mullenix and we look at Ashcroft, both of them said that the court does not require a case directly on point. But it has to be beyond debate. That's true. And there's not a case that has analogous facts. And so we need to find a case where the government had policy reasons, had reasonable reasons for terminating or taking an adverse employment action against a spouse and then did so. And the court said that remained undue intrusion. So there isn't a case that you've cited where the state had policy reasons for terminating a spouse based on a marriage relationship. No. The only case is, let's put it this way, this is not a situation that happens very frequently, like the excessive force cases that Your Honors deal with all the time. I grant that this is a novel circumstance. And Hope v. Pelzer certainly said that qualified immunity can even be denied in novel circumstances. So, yes, this is a novel circumstance. We're not dealing with a public employee. We're dealing with an independent contractor here. But as this Court recognized in Alpha Energy, that independent contractors can be treated as public employees when you're considering First Amendment rights. Let me ask you just two final questions, at least from my perspective. Number one, does the record indicate that Mr. McKay knew prior to the news reports that your client was married to the prisoner in this case? The record does not. The only thing that we do have is that at least one of Dr. DeSoto's peers was on the board of psychological examiners when there were those complaints that were made years earlier. What DCS and high management knew about that, that was certainly going to be the subject of discovery, Your Honor. That's a critical function. And did you plead that he knew that? No, I did not. I did not. He had only come on board, I think, about eight months before my client was terminated. Do you agree it would be important if he didn't know that she was married to him? Yes, it would be important, but still, if he terminated her because of her marital relationship, at least the cases that we found said that would be an undue intrusion into her right of intimate association. Okay. One other question. As you know, the contracting party was, I can't remember whether it was a corporation or an LLC or whatever it was, but she was the sole equity holder. Does that make any difference for purposes of our analysis here, that the contracting party was actually an entity, a business entity, as opposed to her personally? I don't think that it does. I believe Justice O'Connor in the Umber case basically said when we're dealing with constitutional rights, we don't exalt form over substance. So I don't believe that that's a real issue, especially in light of Umber, Alpha Energy Savers, and Claremont. Okay. Any other questions of my colleague? No, thank you. We thank both counsels for their helpful argument. The case just argued is submitted, and the case stands adjourned for the day. I mean the case, not the case. The court stands adjourned for the day.
judges: M. Smith, Ikuta, McAuliffe